UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DENIS BLAIKE, et al.,

    Plaintiffs,

v.

DINA EL-TAWANSY, et al.,

    Defendants.

Case No. 22-cv-04669-RS

**ORDER DISSOLVING TEMPORARY RESTRAINING ORDER AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**I. INTRODUCTION**

The pro se plaintiffs in this suit are individuals experiencing homelessness who have resided in an encampment beneath Highway 101 in San Rafael for over a year. On August 15, 2022, Plaintiffs commenced this suit against the California Department of Transportation ("Caltrans"), the City of San Rafael ("the City"), and a number of state and local government officials. Plaintiffs moved for a temporary restraining order ("TRO") and preliminary injunction ("PI") to halt the planned clearing of the encampment. The TRO was granted pending a hearing and an opportunity for Defendants to respond. A hearing was held on August 19, 2022 to determine whether the TRO should remain in place pending the resolution of the motion for PI.

Plaintiffs have not met their burden for obtaining a TRO or a PI because they are unlikely to succeed on the merits of their claims. For this reason, as discussed below, the TRO is dissolved and the motion for PI is denied.

**II. BACKGROUND**

In July 2021, the City of San Rafael established the "Service Support Area" (SSA) in a

1  Caltrans-owned Park-and-Ride lot under Highway 101 in San Rafael. Dkt. 15, Ex. D. The SSA
2  allowed space for around fifty individuals to set up tents and store their belongings, and it
3  provided amenities including restrooms, device charging, and garbage disposal. Dkt. 15, Exs. F,
4  H. The City further offered case management services to SSA residents and worked with them to
5  find and transition into permanent housing. Dkt. 15, Ex. D.

6  From the outset, the SSA was meant to be a temporary arrangement. Caltrans and the City
7  agreed, when the SSA was established, that the lot would need to be vacated by mid-August 2022
8  so it could be used for its intended purpose. Decl. of Lynn Murphy, Dkt. 15-1 ¶ 4. As that deadline
9  drew near, City officials repeatedly notified SSA residents of the upcoming closure. Dkt. 15-1 ¶¶
10 9–19. The City also worked to relocate residents to congregate shelters or inpatient-treatment
11 shelters, offering incentives for those who did relocate. Dkt. 15-1 ¶¶ 17–22; Dkt. 15, Ex. G.
12 Finally, on Friday, August 12, 2022, Caltrans posted an official notice at the SSA that instructed
13 the remaining residents to vacate by 7:30 AM on Tuesday, August 16, 2022. Complaint, Dkt. 1.

14 Plaintiffs subsequently commenced this suit on Monday, August 15, 2022, along with a
15 motion for TRO and PI seeking to halt the encampment clearing.[1] The Complaint raises ten claims
16 for relief under 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 2000e, the Americans with
17 Disabilities Act ("ADA"), the California Constitution, and California common law. Substantively
18 the claims aver unlawful seizure, race- and disability-based discrimination, breach of contract,
19 conspiracy to violate Plaintiffs' civil rights, and violations of Plaintiffs' due process, First
20 Amendment, and Eighth Amendment rights. The TRO was granted on Monday, August 15, 2022
21 in light of the short notice described by Plaintiffs.

**III. LEGAL STANDARD**

23 The standard for granting a TRO and a PI are substantially the same. *Stuhlbarg Int'l Sales*

---

[1] In addition to the government entities and officials noted in the Introduction, Plaintiffs also sued Barbier Security, a private security contractor for the City of San Rafael. Because the Complaint contains no averments as to the firm's role in the encampment clearing, the TRO is DISSOLVED and the motion for PI is DENIED as to Barbier Security.

*Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Under either standard, the plaintiff must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). Where a complaint is brought by pro se plaintiffs, the court is obligated to evaluate the claims liberally. *See Hebbe v. Pillar*, 627 F.3d 338, 342 (9th Cir. 2010).

## IV. DISCUSSION

Even affording them the benefit of the doubt, Plaintiffs have not met their burden of proving their likelihood of success on the merits. They similarly cannot meet the lower standard of proving there are "serious questions going to the merits" of any of their claims. Because this is the first requirement for granting a TRO/PI, it is unnecessary to assess the remaining three requirements (balance of hardships, likelihood of irreparable harm, and public interest).

### A. State-Created Danger Claims

The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The California Constitution provides similar protection.[2] *See* Cal. Const. art. I, § 7. Under the state-created danger doctrine, a due process violation occurs "when the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious danger." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971–72 (9th Cir. 2011) (internal quotation

---

[2] While it is unclear whether the California Constitution recognizes the state-created danger doctrine, *see Shen v. Albany United Sch. Dist.*, 436 F. Supp. 3d 1305 (N.D. Cal. 2020), the outcome of Plaintiffs' motion is the same regardless.

marks and citations omitted). Plaintiffs, in essence, aver that clearing the SSA would expose them to a higher risk of contracting COVID-19, cut them off from service providers, and force them to live on the streets. This, they argue, constitutes a state-created danger.

Clearing the SSA would undoubtedly be a disruptive, indeed painful experience for Plaintiffs, many of whom may not know where they can go next. Here, however, the risks accompanying the proposed displacement are too speculative to rise to the level of a state-created danger. While Plaintiffs are understandably concerned about contracting COVID-19, risk of exposure to the virus has unfortunately become an everyday reality in our society. That risk has been mitigated to some degree by the widespread availability of vaccines and face masks, as well as more effective treatment options.

Furthermore, the fact that the City offered various forms of shelter to Plaintiffs undercuts the notion that the municipal government acted with deliberate indifference. The City specifically asserted that each Plaintiff has been offered shelter, but that each has refused. *See* Decl. of Lynn Murphy, Dkt. 15-1 ¶ 22. Plaintiffs do not contest this, contending instead that the shelter options on offer are inadequate. Even if the shelter options are less desirable in some respects than the accommodation afforded by the SSA, the fact that shelter was offered demonstrates an effort by the City to mitigate the harms that would flow from displacement. Plaintiffs have also not provided evidence that the available shelter options have inadequate COVID-19 safety protocols. On this record, Plaintiffs are not likely to prevail on their claim that Defendants will subject them to a state-created danger by clearing the SSA.

### B. Eighth Amendment *Martin* Claim

The Eighth Amendment prohibits "cruel and unusual punishment." U.S. Const. amend. VIII. In *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019), the Ninth Circuit held that the Eighth Amendment "preclude[s] the enforcement of a statute prohibiting sleeping outside against homeless individuals with no access to alternative shelter." *Id.* at 615. More generally, *Martin* stands for the proposition that the government may not criminally punish homeless persons for their conduct that is "involuntary and inseparable from status." *Id.* at 617. It does not, however,

ORDER DISSOLVING TRO AND DENYING PRELIMINARY INJUNCTION
CASE NO. 22-cv-04669-RS

4

prohibit cities from barring sleeping in a *particular* place.

Plaintiffs aver that the potential for being criminally prosecuted after being displaced from the SSA raises a *Martin* violation. This is not the case. Caltrans here seeks only to remove Plaintiffs from a particular parking lot. No citywide ban on sleeping is being enforced, nor does such an official policy exist. Moreover, as discussed above, *Martin* is inapposite because Plaintiffs *do* have access to alternative shelter, albeit where they otherwise would prefer not to go. Plaintiffs will therefore not be able to prevail on their Eighth Amendment claims.

### C.  The Remaining Claims

None of the remaining claims can succeed on the merits. Plaintiffs aver that clearing the SSA will result in the destruction of their property, in violation of the Fourth Amendment's prohibition on unreasonable seizures. *See* U.S. Const. amend. IV. Yet this is directly contradicted by the official notice and by Caltrans' filings, all of which state that Plaintiffs' property will be retained for ninety (90) days. *See, e.g.*, Dkt. 2-1, Ex. A. Furthermore, Plaintiffs have not pleaded sufficient facts to determine whether clearing the SSA would involve any discrimination on the basis of race or disability status. Finally, the breach of contract, conspiracy, and First Amendment claims are likewise without merit.

## V. CONCLUSION

Proposed sweeps of homeless encampments have been the frequent subject of litigation in this Court in recent years. This case is the most recent among them, and, so long as the state's homelessness and affordable housing crises persist, it likely will not be the last. While the Constitution affords no affirmative right to housing, it is nonetheless this Court's obligation to ensure that all plaintiffs' constitutional and legal rights are protected, and that state and local governments comply with those duties.

For the reasons discussed above, the TRO is DISSOLVED, effective Friday, August 26, 2022, at 9:00 AM. The motion for a PI is DENIED. The Court nonetheless urges the parties to work together to identify and transition Plaintiffs into more permanent shelter following the clearing of the SSA.

**IT IS SO ORDERED**.

Dated: August 25, 2022

_____
RICHARD SEEBORG
Chief United States District Judge